

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 22, 2017

**BY CM/ECF**

The Honorable Denise L. Cote
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

    Re:    *United States v. David W. Kent*, 16 Cr. 385 (DLC)

Dear Judge Cote:

    The defendant in the above-captioned case is scheduled to be sentenced on September 29, 2017 at 2:00 p.m. For the reasons set forth below, the Government believes that a sentence below the Guidelines range of 46 to 57 months' imprisonment would be sufficient, but not greater than necessary, to meet the purposes of sentencing.

    **I.   Offense Conduct**

    As described in the Presentence Investigation Report ("PSR"), the Defendant David W. Kent was the founder of a website that provided professional networking services to employees in the oil and gas industry ("Website-1"). (PSR ¶ 13). In 2010, the defendant sold Website-1 to a company ("Victim-1") for approximately $51 million. Shortly after the sale, the defendant left Website-1 and founded Oilpro in October 2013, which was a competitor to Website-1. (PSR ¶¶ 17-20). Following the launch of Oilpro, the defendant engaged in three rounds of network intrusions into the Website-1 members database. Between October 2013 and April 2014, the Website-1 members database received approximately 100,000 suspicious hypertext transport protocol ("HTTP") requests to access resumes stored in the Website-1 members database (the "First Round of Hacks"). (PSR ¶ 31). Similarly, between June 2015 and August 2015, the Website-1 members database received approximately 750,000 suspicious HTTP requests to access resumes stored in the Website-1 members database (the "Second Round of Hacks"). (PSR ¶ 36). On December 11, 2015, the Website-1 members database received at least five suspicious HTTP requests to access resumes stored in the Website-1 members database (the "Attempted Third Round of Hacks"). (PSR ¶ 60-61). Based on the speed and quantity of these HTTP requests, it appears that the defendant used an automated program to access hundreds of thousands of resumes in the Website-1 members database. To access the Website-1 members database without being detected, the defendant used a virtual private network to mask his Internet protocol address ("IP

Address"). (PSR ¶ 41). In or around January 2015 and June 2015, the defendant and a co-conspirator ("CC-1") also accessed the Google Analytics account for Website-1 without authorization to access sensitive data regarding Website-1's web traffic. (PSR ¶¶ 50-55).

The defendant used the data from the First Round of Hacks and the Second Round of Hacks to invite members of Website-1 to join Oilpro and increase Oilpro's membership. (PSR ¶¶ 27-30, 35, 45-46). Between the First Round of Hacks and the Second Round of Hacks, approximately 796,000 accounts in the Website-1 members database were accessed without authorization. A significant portion of these accounts received unsolicited invitations to join Oilpro, and eventually joined Oilpro. (PSR ¶ 5). These invitations were typically sent via email by the defendant himself or by employees working at his direction. Additionally, the defendant engaged in discussions to sell Oilpro to Victim-1 during the time frame of the First Round of Hacks and the Second Round of Hacks. As part of these discussions, the defendant implied that Oilpro was worth at least $20 million, if not more. (PSR ¶ 58). He did not mention to Victim-1 the First Round of Hacks, the Second Round of Hacks, or the Attempted Third Hack when asked about the strategies that Oilpro was using to grow its membership base. (PSR ¶¶ 56-69).

The defendant was arrested on March 30, 2016, and a superseding information was filed on December 19, 2016 charging the defendant with one count of accessing a protected computer without authorization, in violation of Title 18, United States Code, Sections 1030(a)(2)(C), (c)(2)(B), and 2. (PSR ¶¶ 2, 70).

## II. The Defendant's Plea and Applicable Guidelines Range

On December 19, 2016, the defendant pleaded guilty to the Information pursuant to a plea agreement. Pursuant to U.S.S.G. § 2B1.1(a)(1), the plea agreement stipulated that the base offense level was six. Pursuant to U.S.S.G. § 2B1.1(b)(1)(I), the plea agreement stipulated that a 14-level enhancement applied because the loss exceeded $1,500,000, but was less than $3,500,000. Pursuant to U.S.S.G. § 2B1.1(b)(10)(B), a two-level enhancement applied because a substantial part of the fraudulent scheme was committed from outside the United States. Pursuant to U.S.S.G. § 3B1.1(c), a two level enhancement applied because the defendant was an organizer, leader, manager, or supervisor in any criminal activity. Pursuant to U.S.S.G. § 3B1.1(c), the defendant used a special skill in a manner that significantly facilitated the commission or concealment of the offense. However, an adjustment based solely on the use of a special skill cannot be employed in addition to an adjustment under § 3B1.1. Assuming a three-level reduction due to the defendant's acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, the plea agreement stipulated a total offense level of 23. The plea agreement also stipulated that the defendant had zero criminal history points, resulting in a Criminal History Category of I. This calculation resulted in a Guidelines range of 46 to 57 months' imprisonment.

In the PSR, prepared on January 9, 2017, the Probation Office conducted the same calculation and also concluded that the defendant's applicable Guidelines range was 46 to 57 months' imprisonment. (PSR ¶¶ 76-87, 90-91, 128).

### III. Discussion

#### A. Applicable Law

Although *United States* v. *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. 220, 264 (2005). As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available;" (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants;" and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

#### B. A Sentence Below the Guidelines Range is Reasonable in this Case.

The Government submits that a sentence below the Guidelines range is appropriate in order to reflect the seriousness of the defendant's conduct, promote respect for the law, and provide just punishment for the offense.

At the outset, the Government believes that a sentence that includes a significant term of incarceration is necessary to reflect the seriousness of the defendant's conduct. In 2010, the defendant became a multi-millionaire when he sold Website-1 to Victim-1 for approximately $51 million. He then took advantage of his inside knowledge of the Website-1 source code to access and download hundreds of thousands of Website-1 resumes in an automated fashion without authorization. To avoid detection, the defendant used a virtual private network located in the United Kingdom to mask his Internet Protocol address and remain anonymous. As a result, it is unlikely that Victim-1 would have even learned of the network intrusions if Website-1 members had not reported receiving unsolicited invitations to join Oilpro--invitations sent by Oilpro

employees at the defendant's direction. Once it learned of the intrusions, Victim-1 spent hundreds of thousands of dollars in response, remediation, and investigation costs to identify and fix the vulnerabilities that the defendant had exploited. *See* U.S.S.G. § 2B1.1 n.3(A)(v)(III) (explaining that loss amount in offenses under 18 U.S.C. § 1030 includes costs of responding to an offense, conducting a damage assessment, and restoring the data). Meanwhile, the defendant actively engaged in merger negotiations with Victim-1, suggesting that Victim-1 could purchase Oilpro for another $20 million. As part of these negotiations, the defendant traveled from Texas to New York City to meet with representatives of Victim-1. In none of these conversations did the defendant ever indicate that he was unlawfully accessing the Website-1 database and inviting Website-1 members to join Oilpro. At a time when businesses and government agencies in the United States are falling victim to network intrusions on a regular and consistent basis--frequently by actors that are unidentified and rarely apprehended--the Government submits that a significant term of incarceration is necessary here to promote respect for the law and discourage the defendant and similarly-situated individuals from engaging in similar conduct in the future.

Nevertheless, the Government believes that a sentence below the Guidelines range here is sufficient to serve the legitimate purposes of sentencing. Following the defendant's arrest, he immediately confessed his involvement in the criminal activity, as well as the involvement of others working at his direction. He then waived indictment and pleaded guilty pursuant to a plea agreement that will require him to pay over $3.3 million in restitution and $2.9 million in forfeiture, financial penalties that will likely be recovered given his wealth and financial resources.[1] The Government also recognizes that the defendant's arrest and conviction has led to numerous collateral consequences affecting him and his family, including the closure of Oilpro and ongoing civil litigation with Victim-1. The defendant has no criminal history, and pleading guilty to a felony charge has undoubtedly impressed upon the defendant the gravity of his criminal conduct. Similarly, the defendant's personal characteristics, education, employment history, family support, and actions following his arrest suggest that he is unlikely to reoffend. For these reasons, the Government believes that a sentence of incarceration below the Guidelines range here would be fair and reasonable.

---

[1] The Government has attached a proposed order of restitution and schedule of victims, which we request be filed under seal.

**V.     Conclusion**

       For the reasons set forth above, the Government respectfully requests that the Court impose a sentence of incarceration below the Guidelines range of 46 to 57 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

                                              Respectfully submitted,

                                              JOON H. KIM
                                              Acting United States Attorney

                              By:      /s/ Sidhardha Kamaraju/Andrew K. Chan
                                              Sidhardha Kamaraju/Andrew K. Chan
                                              Assistant United States Attorneys
                                              (212) 637-6523 / 1072

cc:  Dan Cogdell, Esq.