# SPEARS & IMES LLP

51 Madison Avenue
New York, NY 10010
tel 212-213-6996
fax 212-213-0849

David Spears
tel 212-213-6991
dspears@spearsimes.com

October 4, 2017

Honorable Judge Denise L. Cote
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

### RE: *United States v. David Kent*, 1:16-CR-385-DLC-1
### Response to Victim Impact Letter of DHI Group Inc.

Dear Judge Cote:

We write to correct some of the misstatements and exaggerations made by Mr. Campbell in his letter on behalf of DHI Group Inc. ("DHI"). DHI representatives, including Mr. Campbell, were present at Mr. Kent's plea hearing on December 19, 2016. Despite this Court's instruction for DHI to cooperate with the government to make sure that any submission by DHI was timely, Mr. Campbell's letter was submitted to the U.S. Attorney's Office via email copying Mr. Kent's counsel the day before the sentencing hearing. Mr. Kent's counsel, along with Mr. Kent and his family were literally in the air when that email was sent, and they first read Mr. Campbell's letter after they landed that afternoon. Neither Mr. Kent nor his counsel were aware that any such submission was forthcoming, and we were all caught off guard by the submission. We appreciate the Court granting a one-week adjournment of the sentencing so that we could respond to Mr. Campbell's claims.

### 1. Mr. Campbell's claims about DHI's losses are unsupported by the testimony of his client.

On December 7, 2016, Mr. Kent entered into a plea agreement with the government that included a loss calculation of $1,500,000 to $3,000,000. In negotiations before entering into that agreement, defense counsel communicated to the government that the loss amount was much lower. But counsel's position was rejected because DHI had argued for a much higher amount. Defense counsel believed in good faith that DHI's representations to the government were supported by evidence, and so Mr. Kent accepted the stipulated loss calculation for purposes of the plea agreement. He continues to accept it for purposes of the plea agreement, the sentencing guideline calculation, forfeiture, and restitution.

But as explained in Mr. Kent's sentencing memorandum on pages 19 to 21—and completely ignored by Mr. Campbell—after the plea agreement was reached, representatives from DHI testified under oath that DHI had not identified a single Rigzone customer, job seeker,

candidate or member who was lost because of Mr. Kent's actions. DHI executives could not identify any DHI data or property that was destroyed, corrupted, diminished, or deleted by Mr. Kent. To the contrary, their testimony showed there was no decrease or change in the completeness or the usability of data on any Rigzone computer system. DHI, furthermore, conducted no analysis concerning any decline in business because of Mr. Kent's activity. DHI never assessed the value of the email addresses for the resumes that were accessed by Mr. Kent. And remediation costs incurred by DHI were poorly estimated, highly suspect, and possibly exaggerated. The claimed remediation costs included tens of thousands of dollars in expenses and unsubstantiated time that were incurred purely to assist the government in the criminal prosecution or to otherwise generally improve the security of DHI's computer systems after the remediation work related to Mr. Kent's activities was already completed. The silence of Mr. Campbell's letter on these points is telling. But unfortunately, it is what we have come to expect from DHI—they speak of astronomical losses but cannot support those claims when placed under oath.

Mr. Campbell ignores the testimony from the DHI corporate representatives designated to testify about damages and outrageously asserts that DHI's loss is $20 million. Putting aside that no DHI representative even mentioned a damages amount, much less an explanation of this highly inflated figure in depositions, Mr. Campbell's "best evidence" is Oilpro's, not Rigzone's or DHI's, valuation of Oilpro members. Mr. Campbell offers no information on how DHI valued members or resumes that Mr. Kent accessed. That is because, as the depositions also showed, DHI does not value its business or any business it acquires based on the value of individual members or resumes. DHI has never reached a purchase price to acquire a company based on the value of its members or resumes. So why is it attempting to use this metric now? Because it has no other way to assess loss and will stop at nothing to see Mr. Kent incarcerated for the most time possible.

But more importantly, even if DHI did have a value for each of its members, it cannot say that DHI or Rigzone lost a single member or paying customer due to Mr. Kent's actions. DHI retained all of its member resumes. If DHI did not lose any members, the value of each of its members is irrelevant.[1] The facts here are straightforward, as confirmed by DHI's own sworn testimony: DHI lost no members. DHI lost no customers. DHI lost no income or even any market value from anything related to these events.

Finally, DHI never reported any loss from Mr. Kent's conduct to its shareholders. If Mr. Kent actually caused losses of $20 million, this material information had to be communicated to DHI shareholders. That never occurred. Instead, as the depositions showed, DHI attributed its decline in value on general unfavorable market conditions. Either DHI violated its duty to its shareholders or it is grossly inflating its losses to this Court in the name of seeing Mr. Kent get the "maximum time allowable under the law," to quote Mr. Campbell.

## 2.     The reason we raised the loss issue in the sentencing memorandum.

---

[1] Additionally, Mr. Campbell's skewed formula for determining loss is based in part on his belief that Mr. Kent's actions gained Oilpro 111,000 new members because that is the amount of Rigzone members whose information was accessed by Mr. Kent and eventually created Oilpro profiles. As the Court is aware, the government and probation agree that there is no proof that all 111,000 people joined based on Mr. Kent's actions.

After the depositions showed DHI's claims of loss lack evidence, Mr. Kent's criminal defense counsel reached out to the Assistant United States Attorneys to discuss this revelation. In June and July, 2017, defense counsel wrote four separate letters to the Office concerning the loss figure. On three occasions, counsel flew from Houston to New York to meet with the government concerning the loss issue. The letters and meetings communicated the same notion: It was in the interest of justice to revise—or at minimum revisit—Mr. Kent's plea agreement to account for the critical sworn admissions of DHI representatives. Counsel sought to convince the government that the actual loss was closer to a range of $120,000 to $160,000 based on the findings of Mr. Kent's loss expert in the civil proceedings.

Despite counsel's best effort, the government was not persuaded to revise the plea agreement. Accordingly, Mr. Kent stayed true to his prior agreement and prepared to proceed with sentencing under the terms of the plea agreement. Mr. Kent received the Probation Department's draft Presentence Report on August 17, 2017, and he did not object to the agreed-upon loss amount. Mr. Kent submitted his sentencing memorandum to the Court on September 22, once again accepting the agreed-upon loss amount as controlling for purposes of calculating the sentencing guidelines. We did, however, feel that the Court should be aware of the loss issues as a "circumstances of the offense" matter under 18 U.S.C. § 3553(a)(1).[2]

### 3. DHI's own unauthorized and retaliatory actions against Oilpro.

Again, after DHI was aware of Mr. Kent's conduct, and while it was cooperating with the government, DHI scraped member information from Oilpro's website and used that proprietary information in an unauthorized manner. This potentially violated the CFAA and certainly violated the Department of Justice's policy against retaliatory action.[3] And the unauthorized "scraping" financially benefited DHI, according to the sworn testimony of Michael Durney, the CEO of DHI.

---

[2] The Second Circuit has explained that a sentencing court is entitled to assess whether application of U.S.S.G. § 2B1.1 loss overstates the gravity of the offense and leads to an unjustly harsh sentence. *See United States v. Algahaim*, 842 F.3d 796, 800 (2d Cir. 2016) (stating that the "unusualness" of making loss "the principal determinant of the adjusted offense level . . . is a circumstance that a sentencing court is entitled to consider"); *United States v. Corsey*, 723 F.3d 366, 377 (finding error where district court did not adequately consider "whether treating intended loss like actual loss under all the circumstances of this case leads to a sentence consistent with the dictates of section 3553(a)").

[3] The U.S. Attorney Manual explains:

> Although it may be tempting to do so (especially if the attack is ongoing), the company should not take any offensive measures on its own, such as "hacking back" into the attacker's computer—even if such measures could in theory be characterized as "defensive." Doing so may be illegal, regardless of the motive.

*See* Computer Crime & Intellectual Prop. Section, Dep't of Justice, Prosecuting Computer Crimes, at 180, *available at* http://www.justice.gov/criminal/cybercrime/docs/ccmanual.pdf.

Mr. Campbell implies that there was nothing wrong with DHI's scraping of Oilpro. That position is completely inconsistent with the fact that DHI did not disclose this information to the government while it was cooperating with them to have Mr. Kent criminally charged; that DHI used an anonymizer so that Oilpro could not determine who or what was scraping information from its website; and that DHI used thousands of IP addresses hidden behind VPNs. Indeed, these were the same tactics that Mr. Kent used to avoid detection.

Yet Mr. Campbell minimizes DHI's access and theft of Oilpro's proprietary information on the legal technicality that some courts have held access is not "unauthorized" if the stolen information is on a publicly available website. Mr. Kent could argue the same technicality—the resume information he misappropriated was publicly posted by Rigzone members with intention that others would view it—but Mr. Kent will not deny the gravity of his actions, like DHI. And as Mr. Campbell well knows, Mr. Kent's attorneys are hamstringed from responding fully to his claims about what DHI employees stole from Oilpro because DHI has redacted critical pages of testimony from the DHI employee who oversaw the unauthorized scraping of Oilpro's website, Princepreet Chana. In other words, the full detail of DHI's retaliatory scraping of Oilpro is unavailable to Mr. Kent's criminal attorneys, the government, and this Court because DHI does not want it to be.

## 4.      The Court should fully understand the context of the civil settlement negotiations.

Mr. Campbell claims, inaccurately, that the civil suit was close to settling until Kent demanded DHI tell the government that its losses were $120,000. Mr. Campbell's description is deceptive. As Mr. Campbell knows, DHI accepted a mediator's proposal under which DHI, "agreed to cooperate in the criminal proceeding and to support a loss amount of $120,000." Moreover, Mr. Kent and his civil attorneys initially resisted mediation of the civil case before the criminal case resolved. They participated in mediation because the civil court ordered them to do so. At mediation, Mr. Kent's counsel identified the maximum loss amount of $120,000, based on the opinion of Mr. Kent's expert that reasonable remediation costs should be in the range of $50,000, at best, and an estimated average cost per resume of $.12 made DHI's damages in the range of $70,000. At mediation, this was communicated to DHI's counsel in the context of: (1) reaching an accurate damages amount, (2) requiring that DHI tell the government *the truth*, and (3) highlighting the lack of proof supporting any higher loss figures as revealed in the sworn testimony of DHI's own authorized representatives.

Mr. Kent's counsel in the civil proceedings did not suggest to DHI that it make any misstatement of any sort to the government. Just the opposite. It was DHI who accepted the mediator's proposal and "agreed to support a loss amount of $120,000." And, Mr. Kent's civil counsel made clear that he would not settle absent an admission to the truth by DHI.

Once all parties agreed in the mediation to support a loss amount that was based on a competent analysis of the market value and reasonable remediation costs, Mr. Kent then saw the civil settlement—which was significantly larger than what he agreed to in the plea agreement—as a way to buy peace for himself and his family in a complex litigation matter that seeks punitive damages, attorneys' fees, injunctive relief, and that includes multiple individuals who once worked for Oilpro, including Mr. Kent's brother. Mr. Kent valued the ability to put the civil litigation behind him (and his family) through a settlement. And Mr. Kent was further willing to settle the civil case for figures in excess of the loss amounts in the plea agreement because, as the

4

Court knows, "loss" under the sentencing guidelines encompasses only "pecuniary harm" and does not include the panoply of damages not "readily measurable in money" that are available to a plaintiff in a civil suit. *See* U.S.S.G. § 2B1.1 cmt. n. 3(A)(i)-(iii). However, DHI subsequently withdrew its prior agreement to the mediator's proposal.

Finally, Mr. Kent was not "chastised" by Judge Johnson as Mr. Campbell claims. Mr. Kent was not even in the courtroom. The July 7, 2017 status conference was prompted by Mr. Kent's counsel requesting to conduct additional depositions to further prove no damages. The Court's comments should be viewed with the understanding that this hearing occurred after the case was ostensibly settled, DHI reneged on the settlement agreement, and Judge Johnson was understandably frustrated. Review of the transcript shows that she also voiced frustration at DHI, which refused to accept that any civil damages would be offset by what DHI received in restitution from this case. We hope this Court will view the transcript submitted by Mr. Campbell for what it is—two parties to a civil suit arguing over discovery and damages, which is what civil attorneys do.

### 5. Mr. Kent's contesting DHI's outrageous claims in the civil matter is not inconsistent with acceptance of responsibility.

A primary point of Mr. Campbell's letter is that Mr. Kent has not accepted responsibility, essentially because he has not agreed in full with all of DHI's positions in the related civil matter. Mr. Kent has and will continue to accept responsibility for his criminal actions. But his contesting DHI's wildly unverifiable claims in the civil case does not mean he is denying the commission of the offense to which he has pleaded guilty.

While we recognize the importance of giving victims a voice at sentencing, and we recognize that DHI is a victim with every right to be heard, Mr. Campbell's errant remarks and some of the actions of his client detract from the weight of his letter. Most importantly, his admitted retributive desire for "the maximum time allowable," is a less important sentencing goal than others identified by 18 U.S.C. § 3553(a)(2), i.e., deterrence, restitution, or rehabilitation. These goals would be best served by a sentence that is significantly lower than the advisory guideline range in this unique case.

Sincerely,

*[signature]*

Dan Cogdell

*[signature]*

David Spears

5